**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER MANSOORI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 17-cv-08846 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| CORRECTIONAL OFFICER PATEL, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Christopher Mansoori was an inmate at Cook County Jail ("Jail") from 2015 until February or March 2018. He has brought the present civil rights action under 42 U.S.C. § 1983 against thirteen Defendants who worked at the Jail while he was there, alleging that they violated his constitutional rights in numerous ways. Before the Court is Defendants' motion to dismiss improperly joined Defendants pursuant to Federal Rule of Civil Procedure 21 and all claims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 35.) For the reasons that follow, Defendants' motion is granted in part and denied in part.

## BACKGROUND

The Second Amended Complaint ("SAC") alleges seventeen violations of Mansoori's rights as a pretrial detainee under the Fourteenth Amendment to the U.S. Constitution:

- Count I: on February 21, 2016, C.O. Patel allegedly placed Mansoori in isolation without justification and allowed him to be subjected to degrading treatment by other inmates;

- Count II: on December 24, 2016, C.O. Larkin allegedly destroyed Mansoori's contact lenses, causing him to lose clear eyesight for several months;

- Count III: from June 30, 2017 until Mansoori's release in February or March 2018, Jail dentist Dr. Montgomery allegedly did not provide Mansoori with proper teeth cleaning or dental floss;

- Count IV: from September 21, 2016 until Mansoori's release, Dr. Chris Stinaki, a health care specialist charged with providing food to prisoners, allegedly provided a diet so lacking in nutrition that Mansoori's bones became weak and one of his fingers broke;

- Count V: on March 30, 2016, C.O. McCullough (male) allegedly forced Mansoori to stay in a newly painted cell and inhale dangerous fumes, and refused to get him medical attention for his inhalation of those fumes;

- Count VI: on April 21, 2016, Sergeant McCullough (female) allegedly placed Mansoori in a cell with a prisoner with bipolar disorder over Mansoori's objections, and that prisoner later attacked him;

- Count VII: from July 2, 2017 to November 3, 2017, Superintendent Brown allegedly only permitted Mansoori to wash his clothes on two occasions, giving him skin and foot infections;

- Count VIII: from August 29, 2016 until Mansoori's release, Commander Garcia allegedly failed to remove black mold from showers near Mansoori's cell, forcing him to inhale toxic fumes;

- Count IX: from November 1, 2016 through August 30, 2017, Superintendent Brown allegedly failed to control an infestation of mice in the Jail;

- Count X: during Mansoori's entire incarceration,[1] Commander Garcia and C.O. McCullough (male) allegedly failed to provide him with razors prior to his court appearances, so that he appeared unkempt, hurting his criminal defense;

- Count XI: from February 21, 2016 to April 21, 2016, Sheriff Dart allegedly failed to maintain Mansoori's housing division to a habitable standard;

- Count XII: during Mansoori's entire incarceration, C.O. Larkin and Superintendent Brown allegedly failed to provide Mansoori with nail clippers regularly, causing his nails to grow so long they interfered with his functioning;

- Count XIII: during Mansoori's entire incarceration, Superintendent Brown allegedly failed to oversee barbers cutting Mansoori's hair and allowed the barbers to cut Mansoori's skin;

- Count XIV: from March 1, 2017 through September 1, 2017, C.O. McGiveny allegedly failed to provide Mansoori with sufficient exercise time;

---

[1] Mansoori's SAC does not provide the earliest date or exact length of his incarceration. Defendants, however, have represented that "the alleged occurrences range from June 30, 2015 to roughly March 2018." (Mot. to Dismiss at 3, Dkt. No. 35). The Court will therefore assume that Mansoori was in custody at the Jail at least as early as June 30, 2015.

- Count XV: during Mansoori's entire incarceration, Sheriff Dart allegedly gave him genetically modified soy, increasing his risk of Alzheimer's disease and cancer;

- Count XVI: during Mansoori's entire incarceration, Sheriff Dart allegedly provided him drinking water containing large black specks; and

- Count XVII: during Mansoori's entire incarceration, librarians Ms. Pickens and Ms. Vanco allegedly failed to provide him with reasonable access to the Jail library to do legal research.

(SAC, Dkt. No. 32.) Because Defendants have filed a motion to dismiss these claims for failure to state a claim, the Court accepts Mansoori's factual allegations as true and grants him the benefit of all reasonable inferences that may be drawn from those allegations. *Williamson v. Curran*, 714 F.3d 432, 435 (7th Cir. 2013).

## DISCUSSION

Defendants cite Federal Rule of Civil Procedure 12(b)(6) as the basis for their motion to dismiss. But because Defendants also seek to dismiss improperly joined parties and claims, the Court applies Federal Rule of Civil Procedure 21 as well. With a Rule 21 motion, if the Court finds that certain parties have been misjoined, it may, on just terms, add or drop parties or sever any claim against a party. Fed. R. Civ. P. 21. Generally, plaintiffs must file separate claims against separate parties in different suits. *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). However, Rule 20(a)(2) permits joining multiple defendants in the same action when the plaintiff's claims arise out of the same series of transactions or occurrences and the action presents a question of law or fact common to all defendants. Fed. R. Civ. P. 20(a)(2). The Seventh Circuit has held that the proper remedy for misjoinder is "severance or dismissal without prejudice, not dismissal with prejudice." *UWM Student Ass'n v. Lovell*, 888 F.3d 854, 864 (7th Cir. 2018). Even dismissal without prejudice is an improper remedy if it would result in gratuitous injury to the plaintiff. *See Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000).

In dismissing Mansoori's initial *pro se* complaint the outset of this case, the Court cautioned him not to "bring all of his claims—many of which are unrelated and involve different defendants—in one suit." (*See* May 4, 2018 Order at 2, Dkt. No. 6.) His subsequent complaints, including the SAC, do nothing to remedy that problem. In fact, he appears to have brought the same seventeen violations from the original complaint in the SAC. His claims are asserted against multiple individuals, arise out of disparate aspects of his experience at the Jail, and span his entire years-long incarceration. Clearly, a number of the claims belong in separate suits.

Mansoori urges the Court to sever rather than dismiss any misjoined claims. He argues that the Court must avoid the gratuitous injury that would result to him if his case were dismissed, *see Elmore*, 227 F.3d at 1012, because several of his claims are now beyond the two-year statute of limitations period applicable to § 1983 claims in Illinois. *See Woods v. Ill. Dep't of Child. & Fam. Servs.*, 710 F.3d 762, 768–89 (7th Cir. 2007). It is disappointing that after being warned about the need to separate his claims into distinct suits and receiving multiple extensions of his time to file the present amended complaint, Mansoori has recycled the same allegations of his initial complaint. Nonetheless, the Court will first review each of Mansoori's seventeen counts and decide which state viable claims for relief and then turn to the issue of misjoinder. To the extent any of the surviving claims belong in separate suits, the Court will sever those claims.

### I.     Whether Mansoori's Allegations State Valid Claims

To survive a motion under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint need not contain detailed factual allegations to survive a motion at this stage. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "The complaint's factual allegations must be enough to raise a right to relief above the speculative level." *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019) (internal quotation marks and alterations omitted). "The statement of the claim must sufficiently give fair notice of what the claim is and the grounds upon which it rests to the defendants." *Bonnstetter v. City of Chicago*, 811 F.3d 969, 973 (7th Cir. 2016) (internal quotation marks and alterations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Since Mansoori was held in the Jail as a pretrial detainee,[2] he has brought his claims under the Due Process Clause of the Fourteenth Amendment rather than the Eighth Amendment. *See Kingsley v. Hendrickson*, 576 U.S. 389, 400–01 (2015) ("The language of the two Clauses differs, and the nature of the claims often differs."). Prisoners' "rights are rooted in the Eighth Amendment's prohibition on cruel and unusual punishment. Pretrial detainees are in a different position, because their detention is unrelated to punishment." *Hardeman v. Curran*, 933 F.3d 816, 821 (7th Cir. 2019). In considering prisoners' claims under the Eighth Amendment, courts must apply both a subjective and an objective standard. *Id.* at 822. The Eighth Amendment requires a court to ask "whether the defendant was deliberately indifferent to adverse conditions that deny

---

[2] The SAC does not specifically allege that Mansoori was a pretrial detainee during the events giving rise to this case. It is possible that for at least some of the relevant events, Mansoori was serving a short criminal sentence. However, the Court must draw all reasonable inference in Mansoori's favor at this stage, and pretrial detainees are entitled to greater protections than convicted prisoners. *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). Because Mansoori has alleged that he was an inmate of the Jail (rather than a state prison) and he has brought claims pursuant to the Fourteenth, rather than Eighth, Amendment it is reasonable for the Court to infer that he was a pretrial detainee. *See Johnson v. Watson*, No. 17-cv-061-JPG, 2017 WL 2493132, at *2 (S.D. Ill. June 8, 2017) (assuming that the plaintiff was a pretrial detainee where he had brought claims against St. Clair County Jail officials under the Sixth, Eighth, and Fourteenth Amendments).

the minimal civilized measure of life's necessities." *Id.* (internal quotation marks omitted). By contrast, pretrial detainees' claims "are subject only to the objective unreasonableness inquiry." *Id.* (internal quotation marks omitted). Pretrial detainees therefore may prevail more easily than prisoners, by showing that the defendants' "actions are not rationally related to a legitimate non-punitive governmental purpose or that the actions appear excessive in relation to that purpose." *Kingsley*, 576 U.S. at 398 (internal quotation marks omitted). Still, "[a] showing of negligence or even gross negligence will not suffice." *McCann v. Ogle County*, 909 F.3d 881, 886 (7th Cir. 2018). A pretrial detainee must show "something akin to reckless disregard." *Miranda v. County of Lake*, 900 F.3d 335, 353–54 (7th Cir. 2018) (internal quotation marks omitted). The Seventh Circuit has held that "*Kingsley*'s objective inquiry applies to all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees." *Hardeman*, 933 F.3d at 823. Thus, the Court's task at the Rule 12(b)(6) stage is to decide whether, "taking as true the conditions described in the complaint, with the plausible inferences we may draw from them, we find conditions of confinement that were objectively unreasonable and excessive in relation to any legitimate non-punitive purpose." *Id.* at 824 (internal quotation marks omitted).

As an initial matter, Defendants argue that all Mansoori's claims fail because he does not allege specific injuries. But while a prisoner's allegation that he was injured is certainly relevant, he need not allege that he suffered a specific physical injury to state a valid civil rights claim. *See Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (reversing district court's dismissal when the plaintiff alleged that he was subjected to a needless strip search in front of female prison guards, finding the plaintiff's allegations that "prison guards purposefully demeaned and sexually harassed him" sufficient to state a claim). At this stage, Mansoori only must allege that Defendants violated one of his federally protected rights.

### A.    Isolation and Degrading Treatment (Count I)

In Count I, Mansoori alleges that on February 21, 2016, in the course of disciplining Mansoori, C.O. Patel confined him "in 'segregation' or 'isolation' without justification[,] causing him injury" and allowed Mansoori "to be subjected to inhuman and degrading treatment by other inmates." (SAC at 3.)

Count I does not contain sufficient factual allegations to state a valid claim against Patel. First, while harsh conditions of segregation may rise to the level of a constitutional violation, *see Sanville v. McCaughtry*, 266 F.3d 724, 733–34 (7th Cir. 2001), a short, unwarranted stay in segregation, without more, is not unconstitutional. *Bogan v. Wexford Health Sources*, No. 15 C 7631, 2017 WL 782996, at *3 (N.D. Ill. Mar. 1, 2017). Mansoori alleges conclusorily that he was subjected to "inhuman and degrading treatment" in segregation (*see* SAC at 3), but he has not pleaded any specific facts that would allow the Court to draw the reasonable inference that his treatment was actually inhuman and degrading. *See Bogan*, 2017 WL 782996, at *3 (dismissing Eighth Amendment claim where the plaintiff had "allege[d] no facts to suggest his stay in segregation deprived him of basic human needs"). For example, Mansoori does not allege how long he was confined in segregation, in what way his treatment by other inmates was inhuman and degrading, or the nature of the injury he allegedly suffered. Mansoori has also failed to include any facts suggesting that Patel knew about other inmates' treatment of Mansoori (whatever that was) or could have prevented it, such that the Court can reasonably infer that Patel acted with "reckless disregard." *Miranda*, 900 F.3d at 353; *see also Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 753 (7th Cir. 2021) (dismissing the plaintiff's "conclusory" claim that defendants "knew [the plaintiff] would suffer personal injuries" as a result of their conduct). As

currently pleaded, Count I does not contain enough facts to give Patel fair notice of the claims against him. *See Bonnstetter*, 811 F.3d at 973. Count I of the SAC is therefore dismissed.

### B. Contact Lenses (Count II)

Count II alleges that on December 24, 2016, C.O. Larkin destroyed all of Mansoori's belongings, "including his contact lenses, causing [him] to lose clear eye sight for a number of months and causing injury to his person." (SAC at 4.)

Depriving prisoners of their prescription eyeglasses or contact lenses can amount to a constitutional violation, depending on how bad their vision is without correction. *See Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (reversing dismissal of the plaintiff's Eighth Amendment claim where he alleged that prison officials confiscated his eyeglasses, without which he suffered from double vision and lost his depth perception). But the need for glasses "is not per se a serious medical need." *McIntosh v. Malueg*, No. 09-C-1106, 2011 WL 3684777, at *6 (E.D. Wis. Aug. 23, 2011). In evaluating these sorts of prisoner claims, courts consider the severity of the plaintiff's vision problems, the length of the deprivation, and its impact on the plaintiff's daily activities. *Compare Dobbey v. Randle*, No. 11-CV-0146, 2013 WL 4821027, at *4–5 (N.D. Ill. Sept. 10, 2013) (finding that the lack of eyeglasses did not constitute an objectively serious medical condition where the plaintiff showed no severe impairment in his "ability to read, write, or see objects when walking"); *Lavin v. Hulick*, No. 09-cv-477-MJR, 2010 WL 2137250, *6 (S.D. Ill. May 27, 2010) (dismissing the plaintiff's deliberate indifference claim where he had alleged that he went without glasses for three weeks, but not "that he suffered any physical harm . . . ; he was simply inconvenienced in that he was unable to read"), *with Gevas v. Shearing*, No. 14-CV-134-NJR-DGW, 2016 WL 1221937, at *5–6 (S.D. Ill. Mar. 29, 2016) (denying the defendant's

summary judgment motion where the plaintiff went two weeks without his contact lenses and testified that without them, he could not see or read and was left to sit in his cell doing nothing).

The Court concludes that Count II successfully states a claim against Larkin. The SAC does not indicate how bad Mansoori's eyesight is, which is relevant. But the allegations that he had contact lenses and that without them, he lost clear eyesight allow the Court to draw the reasonable inference that Mansoori had prescription lenses to correct an objectively serious vision problem. In addition, Mansoori alleges that he went without his lenses for several months. Other courts have found that two weeks without lenses may constitute a constitutional violation. *See Gevas*, 2016 WL 1221937, at *5–6. Defendants' motion to dismiss is denied with respect to Count II.

### C.    Dental Care (Count III)

Count III of the SAC alleges that from June 2017 until Mansoori's release in February or March 2018, the Jail's dentist, Dr. Montgomery, "failed to provide proper dental care, including teeth cleaning and dental floss, causing [Mansoori]'s teeth to decay" and causing him pain. (SAC at 4.) The Seventh Circuit has recognized that "dental care is one of the most important medical needs of inmates." *Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005) (internal quotation marks omitted). Thus, "dental pain accompanied by various degrees of attenuated medical harm may constitute an objectively serious medical need." *Id.* (collecting cases). By contrast, merely "being denied preventative dental care," without further allegations of "any pain, injury or ongoing serious dental problem," is not sufficient to state a claim for relief. *Rial v. McGinnis*, 756 F. Supp. 1070, 1073 (N.D. Ill. 1991).

In this case, Mansoori claims that Montgomery's denial of proper cleaning and dental floss resulted in his teeth decaying and caused him continuing pain. Because Mansoori points to

actual harm that he suffered as a result of Montgomery's inadequate dental care, he has successfully stated a claim. Accordingly, the motion to dismiss is denied with respect to Count III.

### D.     Jail Diet (Count IV)

Count IV of the SAC alleges that from September 2016 until Mansoori's release, Dr. Chris Stinaki, a health specialist at the Jail, provided inmates "a totally inadequate diet, lacking in nutrition." (SAC at 5.) Mansoori claims that his diet was so inadequate that his bones became weak and one of his fingers broke. (*Id.*) In the Seventh Circuit, a prisoner's allegation that he was served a "nutritionally deficient diet" or that his food was "well below nutritional value" is sufficient to state a claim under the Due Process Clause or the Eighth Amendment. *Smith v. Dart*, 803 F.3d 304, 312 (7th Cir. 2015) (internal quotation marks omitted). Mansoori's claim against Dr. Stinaki meets that standard. Accordingly, Count IV survives Defendants' motion to dismiss.

### E.     Paint Fumes (Count V)

Count V alleges that on March 30, 2016, C.O. McCullough "forced [Mansoori] to stay in his newly painted cell, causing him to breathe toxic fumes for twenty-four hours," and then refused to get Mansoori proper medical attention. (SAC at 5–6.) Again, the Court's task at this stage is to determine whether the alleged conditions are "objectively unreasonable and excessive in relation to any legitimate non-punitive purpose." *Hardeman*, 933 F.3d at 824. Conditions are objectively unreasonable when they are "sufficiently serious that [they] result[] in the denial of the minimal civilized measure of life's necessities." *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (internal quotation marks omitted). Generally, allegations of long-term exposure to unhealthy, unsanitary living conditions are sufficient to state § 1983 claims. *See Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (reversing district court's dismissal of the plaintiff's

claim that prison officials failed to stop a sixteen-month infestation of cockroaches). It is not necessary for a plaintiff to allege that he sustained an injury as a result of unsanitary conditions of confinement. *See Gray*, 826 F.3d at 1006 ("Excessive cold, for example, can also amount to an Eighth Amendment violation, even if the prisoner has not yet come down with the flu."). But allegations of serious injury or resultant health problems are relevant. *See id.* at 1006–07 (summary judgment in the defendant's favor reversed where the plaintiff presented evidence that excessive exposure to dust, dander, and animal feces over several months made his asthma worse and led to skin breakouts).

The Court concludes that Count V fails to state a claim against McCullough. Mansoori alleges that he was only forced to stay in a newly painted cell for a period of twenty-four hours. (SAC at 5–6.) Generally, only prolonged conditions amount to a constitutional violation. *See Antonelli*, 81 F.3d at 1431. Given the short-term nature of his alleged exposure to paint fumes, specific and serious allegations regarding how the fumes impacted Mansoori's health would be necessary to state a claim. But Mansoori's allegation that the fumes caused him injury is conclusory and does not provide sufficient facts for the Court to discern whether the exposure was objectively unreasonable. Count V is therefore dismissed.

### F. Cellmate with Bipolar Disorder (Count VI)

Count VI alleges that on April 21, 2016, Sergeant McCullough (who appears to be a different person than C.O. McCullough) placed Mansoori in a cell with a prisoner suffering from bipolar disorder; when Mansoori requested to be placed in a different cell, she refused to move him. (SAC at 6.) Mansoori alleges that his cellmate attacked him and caused him injuries as a result of Sergeant McCullough's actions. (*Id.*)

"Jail officials have a duty to protect inmates from violent assaults by other inmates." *See Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650, 669 (7th Cir. 2012) (citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). In *Miranda*, the Seventh Circuit indicated that a pretrial detainee seeking to state a claim for failure to protect would need to plausibly allege that the defendant acted with reckless disregard to a known substantial risk. 900 F.3d at 353; *see Tidwell v. Hicks*, 791 F.3d 704, 708 (7th Cir. 2015). For instance, in *Kyles v. Beaugard*, the district court found that a prisoner plausibly alleged failure-to-protect claims against prison officials where the prisoner alleged that officials housed him with an inmate who was a known member of a gang that was "out to injure or kill" him and that the inmate had a history of violence. No. 15 C 8895, 2017 WL 2559038, at *4 (N.D. Ill. June 13, 2017) (internal quotation marks omitted).

Here, however, Mansoori has not pleaded sufficient facts to plausibly suggest that Sergeant McCullough recklessly failed to protect him from a known risk. Even if the Court were to assume that Sergeant McCullough knew Mansoori's cellmate had bipolar disorder (a fact not actually alleged), that would not be enough to support a plausible inference that Sergeant McCullough should have known Mansoori's cellmate was dangerous. Otherwise, Jail officials would commit a constitutional violation whenever they assigned inmates bipolar cellmates. Mansoori's allegation that he asked McCullough to move him to a different cell also fails to establish McCullough's reckless disregard to his safety. If Mansoori had alleged that he told McCullough his cellmate threatened him or was violent, the outcome might be different. But as currently pleaded, Count VI fails to state a claim against Sergeant McCullough and is dismissed.

### G.     Laundry (Count VII)

Count VII alleges that between July 2, 2017 and November 3, 2017, Superintendent Brown, who was tasked with daily custody and control over inmates, "permitted [Mansoori] to

wash his clothes on only two occasions and refused to permit [him] to wash his clothes more frequently." (SAC at 7.) Mansoori also alleges that because Brown denied him access to clean laundry, he "develop[ed] skin and foot infections." (*Id.*)

The Constitution requires prison officials to "provide inmates with a minima of shelter, sanitation and utilities—basic necessities of civilized life." *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989). Prisoners are entitled to laundry access over long periods of time. *See Howard v. Adkison*, 887 F.2d 134, 137 (8th Cir. 1989) (affirming district court's entry of judgment in favor of a prisoner who established that he "was denied laundry service during his first five months" in a particular housing unit). But the Constitution does not mandate frequent access to laundry services. *See Martin v. Lane*, 766 F. Supp. 641, 648 (N.D. Ill. 1991) (granting defendants' summary judgment motion as to a laundry access claim because the deprivation lasted, at most, eighteen days).

In this case, Mansoori has alleged that Brown allowed him to wash his clothes twice over a four-month period (from July to November). Based on that allegation, the Court may draw the reasonable inference that Mansoori went several months without clean laundry, which is sufficient to state a claim. Moreover, Mansoori has alleged that this deprivation led him to develop skin and foot infections. The allegation of a specific health consequence suggests that this condition of confinement may plausibly rise to the level of a unconstitutional violation. *See Gray*, 826 F.3d at 1006–07. Defendants' motion to dismiss is thus denied with respect to Count VII.

### H. Black Mold (Count VIII)

Count VIII alleges that Commander Garcia, who was responsible for prisoners' daily care, "failed to remove black mold from the showers, located next to [Mansoori]'s cell" from August

29, 2016 until February or March 2018. (SAC at 7.) Mansoori claims that over that period of more than a year-and-a-half, he breathed in fumes from the mold, causing him injury. (*Id.*)

Prisoner allegations of long-term exposure to unhealthy, unsanitary living conditions, are generally sufficient to state claims. *See Antonelli*, 81 F.3d at 1431. Indeed, the Seventh Circuit has found viable claims where unhealthy ventilation, including black mold in the duct system, allegedly gave inmates breathing problems. *Board*, 394 F.3d at 485–87; *see also Morton v. Dart*, No. 16-cv-5057, 2017 WL 4785925, at *1–3 (N.D. Ill. Oct. 23, 2017) (denying the motion to dismiss a prisoner's § 1983 claims when the complaint included an allegation that officials ignored mold growing in jail cells and showers); *but see McNeil v. Lane*, 16 F.3d 123, 125 (7th Cir. 1993) (affirming dismissal of the plaintiff's claim based on living in a cell near asbestos-covered pipes for ten months because he did not plead "facts sufficient to establish that he was exposed to unreasonably high levels of asbestos"). Mansoori has alleged that Garcia, who was responsible for prisoners' care on a daily basis, failed to remove black mold growing near Mansoori's cell for more than a year-and-a-half. The Court finds that Count VIII sufficiently alleges that Garcia acted in reckless disregard to a long-term, unsanitary living condition, and thus, states a valid claim. Defendants' motion to dismiss is denied with respect to Count VIII.

## I.     Mice Infestation (Count IX)

Count IX alleges that from November 1, 2016 through August 30, 2017, Superintendent Brown, tasked with the daily care of prisoners, "failed to control the infestation of mice, resulting in an unhealthy living environment and causing [Mansoori] injury." (SAC at 8.)

"Depending on how extensive the infestation of a prisoner's cell is, what the infesting pests are, what odors or bites or risk of disease they create, . . . and how long the infestation continues," an infestation may rise to the level of a constitutional violation. *Thomas v. Illinois*,

697 F.3d 612, 614 (7th Cir. 2012) (noting in *dicta* that it was not necessary for a prisoner alleging

a mice and cockroach infestation to plead that he sustained significant physical harm); *see also*

*Antonelli*, 81 F.3d at 1431 (sixteen-month infestation of cockroaches sufficient to state a claim).

Less severe allegations concerning exposure to pests generally will not suffice. *See Sain v. Wood*,

512 F.3d 886, 894 (7th Cir. 2008) (summary judgment warranted where the plaintiff had alleged

that over his six-year sentence, he only saw "several" cockroaches in his cell, was bitten twice,

and that exterminators came every month-and-a-half).

Mansoori has not included any facts in the SAC to indicate how bad the mice infestation

was (such as how often he would encounter mice in his cell or how many mice there were) or how

his health suffered as a result. To the contrary, Mansoori's allegation that the mice created an

"unhealthy living environment" is entirely conclusory. Such sparse, conclusory allegations are not

sufficient to state a claim against Brown. As a result, Count IX is dismissed.

### J.     Razors (Count X)

Count X alleges that during Mansoori's entire incarceration, Commander Garcia and C.O.

McCullough failed to provide him with razors before his court appearances, causing him to

appear unkempt and hurting his criminal defense. (SAC at 8–9.)

Prisoners are entitled to the "basic necessities of civilized life." *Johnson*, 891 F.2d at 139.

But temporary deprivations of minor hygienic items like razors do not rise to the level of

constitutional violations. *See Tucker v. Randall*, 840 F. Supp. 1237, 1247 (N.D. Ill. 1993)

(granting the defendants' motion for summary judgment where the plaintiff was intermittently

deprived of a razor, toothbrush, and nail clippers and limited to one shower per week). And

limiting inmates' access to a potentially dangerous item like a razor plainly furthers the

"legitimate non-punitive governmental purpose" of inmate safety. *Kingsley*, 576 U.S. at 398; *see*

*generally Rice*, 675 F.3d 650 (lawsuit brought by a pretrial detainee's parents alleging that jail officials should have done more to prevent his suicide when they knew he had previously attempted suicide in his cell by cutting his neck with a disposable razor).

Because Mansoori emphasizes that Garcia and McCullough hurt his criminal defense by failing to provide him with razors before his court appearances, Count X could also be liberally construed as a Sixth Amendment claim concerning meaningful court access. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."); *Barbosa v McCann*, No. 08 C 5012, 2009 WL 2913488, at *5 (N.D. Ill. Sept. 8, 2009) (analyzing the plaintiff's allegation that he had limited access to legal materials in prison under the Sixth Amendment). But this interpretation does not help Mansoori's cause. To allege successfully that jail officials violated his Sixth Amendment right, Mansoori would have to plead facts sufficient for the Court to infer that, by denying him razors, Garcia and McCullough impeded his efforts to pursue a specific legal claim or meritorious challenge, actually hurting his criminal case. *See Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009); *Barbosa*, 2009 WL 2913488, at *5. Mansoori's claim fails to plausibly allege that Garcia and McCullough's denial of razors meaningfully impacted his criminal case. He has not done so. Accordingly, Count X is dismissed.

## K. Habitable Housing (Count XI)

Count XI alleges that, for a period of two months between February 2016 and April 2016, Sheriff Dart failed in his responsibility of maintaining Jail facilities in a habitable condition. (SAC at 9.) Specifically, Mansoori alleges that over that two-month period, he was living in "Division 6, Tiers 1P and 1J, which were uninhabitable during that period of time, causing injury." (*Id.*)

This allegation falls far short of stating a claim against Dart. Mansoori merely provides a conclusory statement that the Jail was uninhabitable. He has not provided any details from which the Court can determine whether he has plausibly alleged an objectively unreasonable condition of confinement. As currently pleaded, the Count fails to provide Dart fair notice about the facts giving rise to the claim. Count XI is therefore dismissed as well.

### L.    Nail Clippers (Count XII)

Count XII alleges that C.O. Larkin and Superintendent Brown, both tasked with daily care of prisoners, failed to provide Mansoori nail clippers frequently enough during his entire incarceration. (SAC at 9–10.) Mansoori claims that "the nails on his hands and toes, grew so long, that [he] could not function, causing him injury." (*Id.* at 10.)

As noted above, the Constitution guarantees prisoners access to the "basic necessities of civilized life." *Johnson*, 891 F.2d at 139. That includes access to necessary hygiene items. *See Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (reversing grant of summary judgment where the plaintiff demonstrated that he received a toothbrush, toothpaste, but no canteen, soap, and limited toilet paper for around twelve days). But frequent access to less critical (and potentially dangerous) items such as razors and nail clippers is not required. *See Tucker*, 840 F. Supp. at 1247. In *Estate of DiMarco v. Wyoming Department of Corrections, Division of Prisons*, for example, the Tenth Circuit rejected the plaintiff's argument that denial of "certain amenities such as nail clippers and mirrors" for over a year violated her due process rights. 473 F.3d 1334, 1343 (10th Cir. 2007). While Mansoori has alleged that his nails were so long that he "could not function," he has not offered any factual allegations about how the length of his nails interfered with his daily activities. Without such factual allegations, Count XII does not plausibly allege a constitutional deprivation. This Count is therefore dismissed.

### M.    Supervision of Barbers (Count XIII)

Count XIII alleges that during Mansoori's entire incarceration, Superintendent Brown "failed to properly oversee the barbers cutting [Mansoori]'s hair, so that the barbers cut open [his] skin and inflicted wounds." (SAC at 10–11.)

Count XIII is based on Brown's failure to oversee others. To be individually liable under § 1983, officials acting in a supervisory capacity must be aware of the unconstitutional conduct and "facilitate it, approve it, condone it, or turn a blind eye." *Sanville*, 266 F.3d at 740. At the motion to dismiss stage, allegations that supervisors heard prisoners' complaints about subordinates' conduct are generally sufficient to establish supervisors' knowledge of that conduct. *See, e.g.*, *Barbosa*, 2009 WL 2913488, at *7. But Mansoori has not pleaded any facts from which the Court can infer that Brown knew about the barbers' alleged actions in cutting open his skin and inflicting wounds. Count XIII is therefore dismissed.

### N.    Physical Exercise (Count XIV)

Count XIV alleges that C.O. McGiveny, one of the officers charged with Mansoori's daily care, "failed to provide sufficient recreational and exercise time" to Mansoori from March 1, 2017 to September 1, 2017. (SAC at 11.) The Seventh Circuit has recognized that serious interference with inmates' ability to exercise could violate the Constitution. *Delaney v. DeTella*, 256 F.3d 679, 684–85 (7th Cir. 2001) (finding the prisoner's allegation that he went six months without the opportunity to exercise was sufficient to state a claim). But in this case, Mansoori has offered only a conclusory allegation that he did not receive "sufficient" exercise over a six-month period. The SAC does not allege any facts from which the Court could determine whether the alleged deprivation plausibly rises to a violation of constitutional rights—for example, Mansoori does not allege how much recreational and exercise time he did receive, whether the amount changed over

time, what type of recreation and exercise he was allowed (or denied), or why the amount and type of recreation and exercise was not sufficient for his needs. In short, Mansoori's allegations are too sparse and conclusory to state a claim. Count XIV is therefore dismissed.

### O. Genetically Modified Soy (Count XV)

Count XV alleges that during Mansoori's entire incarceration, Sheriff Dart provided prisoners a diet high in genetically modified soy, "which destroys brain cells, promotes Alzheimer's disease and causes cancer to proliferate." (SAC at 11.) To succeed on a constitutional claim regarding prison food, the plaintiff must allege that the food, if not nutritionally inadequate, poses an immediate risk to inmates. *Smith*, 803 F.3d at 312. Yet Mansoor's general allegations that soy kills brain cells and increases the risk of cancer and Alzheimer's disease are all speculative and focused on potential long-term consequences rather not immediate dangers. For that reason, numerous courts have dismissed similar claims, finding that prisoners' allegations of soy-rich diets do not rise to the level of a constitutional violation. *See Riley-El v. Godinez*, No. 13 C 8656, 2015 WL 4572322, at *3 (N.D. Ill. July 27, 2015) (collecting cases). Given the speculative and generalized nature of the allegations, this Court reaches the same result here. Count XV against Dart is dismissed.

### P. Drinking Water (Count XVI)

Count XVI alleges that Dart provided Mansoori and other inmates drinking water with large black specks. (SAC at 12.) Again, as noted above, prisoners are entitled to food and drink that does not threaten their immediate health. *Smith*, 803 F.3d at 312. But food served in prison is not required to be completely free from all safety hazards or pollutants. *Carroll v. DeTella*, 255 F.3d 470 (7th Cir. 2001). Accordingly, courts have held "[t]hat the food may occasionally contain foreign objects or is served cold, while unpleasant, does not amount to a constitutional

deprivation." *See Barbosa*, 2009 WL 2913488, at *3 (citing *Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994) ("complaints about cold and poorly-prepared food must fa[i]l")).

Here, Mansoori has not alleged any facts suggesting that the large black specks in his water posed any real, immediate danger. He does not allege that the substance in the water was dangerous or poisonous; nor does he make any allegation of injury other than the same general claim that the situation caused injury to him that he includes for each and every one of his seventeen claims. Drinking water containing large black specks might not be pleasant, but, without more, it does not suggest a plausible constitutional violation. Count XVI is therefore dismissed.

### Q.      Legal Library Access (Count XVII)

Count XVII alleges that during Mansoori's entire incarceration, Defendants Pickens and Vanco refused to give him "reasonable access" to the Jail library to conduct legal research. (SAC at 12–13.) Count XVII amounts to a claim that Defendants violated Mansoori's Sixth Amendment right to access the courts. As discussed above, to state such a claim successfully, Mansoori would need to allege that his limited library access prejudiced a particular defense that may have been successful. *Barbosa*, 2009 WL 2913488, at *5. Mansoori has not done so. And like many of Mansoori's other counts, Count XVII is simply too conclusory to state a valid claim. Mansoori has not provided any facts to allow the Court to infer that his access to the Jail library was actually unreasonable. This Count against Pickens and Vanco is therefore dismissed.

### II.      Severing Misjoined Claims

The Court has now reviewed all seventeen counts of Mansoori's SAC and determined that the following five state valid claims:

- Count II: on December 24, 2016, C.O. Larkin destroyed Mansoori's contact lenses, causing him to lose clear eyesight for several months;

- Count III: from June 30, 2017 until Mansoori's release in February or March 2018, Jail dentist Dr. Montgomery did not provide Mansoori with proper teeth cleaning or dental floss;

- Count IV: from September 21, 2016 until Mansoori's release, Dr. Chris Stinaki, a health care specialist charged with providing food to prisoners, provided a diet so lacking in nutrition that Mansoori's bones became weak and one of his fingers broke;

- Count VII: from July 2, 2017 to November 3, 2017, Superintendent Brown only permitted Mansoori to wash his clothes on two occasions, giving him skin and foot infections; and

- Count VIII: from August 29, 2016 until Mansoori's release, Commander Garcia failed to remove black mold from showers near Mansoori's cell, forcing him to inhale toxic fumes.

Because it is clear that these Counts do not all belong in the same suit, the Court will sever the improperly joined claims.

As discussed above, distinct claims against various defendants belong in different suits. *George*, 507 F.3d at 607. But joining multiple defendants is permissible under Rule 20(a)(2) where the claims arise out of the same transaction, occurrence, or series of transactions or occurrences. Fed. R. Civ. P. 20(a)(2). Two of Mansoori's surviving claims (Counts VII and VIII) concern unsanitary conditions of confinement at the Jail during the 2016–2018 time frame; those claims may proceed in the same case. The remaining Counts II, III, and IV—which concern Mansoori's eyesight, dental care, and diet—do not share any common Defendants or arise out of the same series of transactions or occurrences. Those claims will be severed so that Mansoori may proceed with those claims as separate cases, if he so desires.

**CONCLUSION**

For the foregoing reasons, Defendants' motion to dismiss is granted in part and denied in part. (Dkt. No. 35.) Counts I, V, VI, IX, X, XI, XII, XIII, XIV, XV, XVI, and XVII are dismissed without prejudice. Counts II, III, IV, VII, and VIII survive the motion to dismiss but may not proceed all in the same action. Counts VII and VIII may be brought in the same case and will proceed under the current case number. Counts II, III, and V—which do not share common Defendants or arise out of the same series of transactions or occurrences—are severed and may proceed as separate actions under separate case numbers. Although the dismissed counts are dismissed without prejudice, the Court cautions Mansoori that any attempt to amend any complaint to add back improperly joined claims will result in summary dismissal of those claims.

ENTERED:

Dated:  March 8, 2022

_____

Andrea R. Wood
United States District Judge